ALVIN LEWIS DAVIS v. WILLIAM S. DAVIS AND VIRGINIA C. DAVIS

No. 8125SC1034

(Filed 6 July 1982)

**1. Partnership § 1.1— formation of partnership—sufficiency of evidence**

Plaintiff's evidence was sufficient to permit the jury to find that plaintiff and the male defendant orally agreed to form a partnership or formed a partnership by their acts and declarations where it tended to show that the parties discussed plaintiff's coming into the business operated by the male defendant; the parties thereafter worked together in the business; plaintiff understood their oral agreement to provide that he would own 30% and the male defendant would own 70% of the business; the male defendant considered plaintiff as "management" because he could not trust an employee; plaintiff did in fact receive a share of the profits of the business; and the male defendant prepared partnership tax returns for the business in which he listed himself and plaintiff as owners of the partnership.

**2. Partnership §§ 1.2, 9.1— formation of partnership—accounting—issues and instructions**

The trial court did not err in submitting issues as to whether plaintiff owned a 30% partnership interest in a certain business, whether partnership earnings were used to purchase a lot and building, and whether plaintiff was entitled to an accounting for 30% of the profits and assets of the partnership business, and the trial court's instructions adequately explained and applied the law to the facts related to those issues.

**3. Partnership § 9.1— partnership accounting—responsibilities and powers of referee—court order**

The trial judge did not err in defining the scope of responsibilities and the powers of the referee appointed to conduct an accounting of partnership profits and assets. G.S. 1A-1, Rule 53(e) and (f)(2).

**4. Partnership § 9.1— costs of partnership accounting taxed against defendants**

The trial judge did not err in ordering the defendants to pay all costs of an accounting of the partnership profits and assets, "including but not limited to, referee's compensation and expenses, fees of accountant, appraisers, and stenographer." G.S. 6-21(6).

APPEAL by defendants from *Rouse, Judge.* Judgment entered 17 April 1981 in Superior Court, CATAWBA County. Heard in the Court of Appeals 6 May 1982.

In his verified complaint, plaintiff alleged that "on or about August 1, 1977, the plaintiff and the defendant, William S. Davis, entered into a partnership, on a 30%-70% ownership basis, to carry on a business known as 'Davis Duplicating Machines and Supplies.'" Plaintiff further alleged that defendant William S. Davis [hereinafter referred to as William] breached the partnership agreement making it impractical for plaintiff to "carry on the business in partnership with him," in that William and defendant Virginia C. Davis [hereinafter referred to as Virginia], his wife, acquired real property in their names alone with partnership funds, and that William now denies that a partnership was created "and that plaintiff is not a 30% owner of the partnership business and property." Plaintiff prayed for a decree of dissolution of the partnership to be carried out by a referee, an accounting of partnership funds and property, and the taxing of costs against defendants.

Defendants answered, saying that on or about 15 July 1977, William suggested to plaintiff that plaintiff consider joining with him in a "partnership arrangement" in his business. Defendants alleged that William

offered the Plaintiff a thirty percent ([plaintiff]) — seventy percent (William) profit sharing arrangement in the proposed partnership, such that the Plaintiff would receive thirty percent of the net profits of the business and, ultimately, the Plaintiff would own thirty percent of the assets of the business, after the Plaintiff had left in the business a sufficient amount of his undistributed share of the net profits of the business to equal thirty percent of the total capital investment in the business.

Plaintiff told William that "he would 'try it on a trial basis . . ..'" However, defendants alleged, the parties never agreed on the

Davis v. Davis

terms of a partnership agreement, "never executed a written partnership agreement and never had a meeting of the minds on a verbal partnership agreement."

The jury rendered a verdict for plaintiff, and defendants appeal from the judgment entered thereon.

*Randy D. Duncan for plaintiff-appellee.*

*Oma H. Hester, Jr., for defendant-appellants.*

HILL, Judge.

Plaintiff testified that he and William agreed to the terms of their business "that William would own seventy percent and I would be the thirty percent owner, as partners . . .." Plaintiff explained,

> When we agreed on the agreement, towards the middle of July, there was thirty percent he gave me and he was going to keep seventy percent for himself of the company. We agreed on the percentage of the company as to ownership and I even questioned him about why he was willing to give me thirty percent of the company and why he didn't hire somebody. He gave me a couple of reasons. One, he could not trust an employee and he had worked too hard to build up for an employee to break it down. He also wanted me and my vehicle in there . . ..

Thus, plaintiff brought his automobile into the business and began to learn about the care and maintenance of the machines they sold and serviced. William and plaintiff worked together in the business, and William introduced plaintiff "many, many times to our customers as his partner." However, the parties agreed that William always would have the last word on decisions "since he was the biggest percentage owner of the company . . .."

The business grew and eventually moved from William and Virginia's house to another location. Although William and plaintiff talked over the financial arrangements in acquiring a new location for the business, he testified that "I learned later that William and Virginia had went to purchase the property and the reason they gave me was because he had to tie up a piece of property that he owned elsewhere in the business to be able to get

the loan he got." Plaintiff's name was not on the deed. Plaintiff further testified as follows:

> From August 1977, my brother and I got along fine for probably six months and I wanted a partnership in writing and William told me two or three different times that our agreement was binding in a court of law. His exact words were what is the hurry, our agreement is binding in a court of law. We never signed an agreement.

William filed partnership tax returns in 1977 and 1978 on which he listed himself and plaintiff as owners of the partnership. However, until the end of 1979, no written partnership agreement was drawn. Plaintiff testified that the agreement William had drawn was "fully in his favor and not mine. It was not like we had agreed before I came to the company." Plaintiff was asked to leave the business shortly thereafter.

Plaintiff's other brother, Charles E. Davis, testified that William said that he "owned the business, that he felt like he shouldn't give [plaintiff] any more than thirty percnet [sic] . . .." Davis stated that his brothers told him individually that William offered plaintiff thirty percent of the business.

William testified that the terms upon which plaintiff would come into the business with him "were that initially he would get thirty percent of the net profits of the business after all expenses." However, plaintiff told William that "he was not certain that he wanted to come in and he wanted to try it on a trial basis . . .." William stated that he and plaintiff never agreed upon a partnership, although such a written agreement was attempted. William further testified as follows:

> What [plaintiff] was asking for was thirty percent and he did not believe he got thirty percent of the net profit. . . . He said that he wanted a guarantee . . . that he was not going to receive only thirty percent of the liability of the company. We had discussed before the possible liabilities and he said that he was not going to receive that on that thirty percent, and I told him that I would look it over and that I would try to make this more acceptable to him. [Plaintiff] had no interest in the assets of the business. He already had been paid more than thirty percent from the net profits of the business.

William stated that the down payment on the building acquired for the business was made from business funds and that the deed is in his and Virginia's names. He denied that he discussed the purchase of the building with plaintiff.

[1]  In their first argument, by Assignment of Error Nos. 28, 29 and 30, defendants contend that the trial judge erred in failing to grant their motions for directed verdict and for judgment notwithstanding the verdict on the ground that the evidence was insufficient for the jury to find that plaintiff owned a partnership interest of 30% in Davis Duplicating Machines and Supplies. The question raised by a directed verdict motion is whether the evidence is sufficient to go to the jury. *Rappaport v. Days Inn of America, Inc.*, 296 N.C. 382, 250 S.E. 2d 245 (1979); *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). The propriety of granting a motion for judgment notwithstanding the verdict is determined by the same considerations as a directed verdict motion. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974); *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). Thus, in passing upon such motions, the trial judge must consider the evidence in the light most favorable to the non-movant, resolving all conflicts and giving to him the benefit of every inference reasonably drawn in his favor. *Rappaport v. Days Inn of America, Inc., supra; Summey v. Cauthen, supra.* A directed verdict motion by defendants may be granted only if the evidence is insufficient as a matter of law to justify a verdict for plaintiff. *Husketh v. Convenient Systems, Inc.*, 295 N.C. 459, 245 S.E. 2d 507 (1978); *Dickinson v. Pake, supra.*

Under the North Carolina Uniform Partnership Act, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." G.S. 59-36(a). G.S. 59-37 provides, in part, as follows:

> In determining whether a partnership exists, these rules shall apply:
>
> . . . .
>
> (3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

Davis v. Davis

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

. . . .

b. As wages of an employee or rent to a landlord . . ..

Therefore, in order for plaintiff to prevail, there must be evidence from which the jury could conclude that the parties agreed "to carry on as co-owners a business for profit" in 70% and 30% shares. *See Williams v. Biscuitville, Inc.*, 40 N.C. App. 405, 253 S.E. 2d 18, *disc. rev. denied*, 297 N.C. 457, 256 S.E. 2d 810 (1979).

"Partnership is a legal concept but the determination of the existence or not of a partnership, as in the case of a trust, involves inferences drawn from an analysis of 'all the circumstances attendant on its creation and operation,' [citations omitted]."

Not only may a partnership be formed orally, but "it may be created by the agreement or conduct of the parties, either express or implied," [citation omitted]. . . . "A voluntary association of partners may be shown without proving an express agreement to form a partnership; and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such."

*Eggleston v. Eggleston*, 228 N.C. 668, 674, 47 S.E. 2d 243, 247 (1948), *quoted in Reddington v. Thomas*, 45 N.C. App. 236, 240, 262 S.E. 2d 841, 843 (1980).

Considering the evidence recounted above in the light most favorable to plaintiff, as we must, we find that it was sufficient for the jury to infer that either the parties orally agreed to form a partnership with William as the 70% owner of the business and plaintiff as its 30% owner, or that by their conduct, express or implied, a partnership was formed.

Plaintiff's evidence clearly shows that the parties discussed his coming into the business which led to their subsequent

engagement together in business transactions. Plaintiff understood their oral agreement to provide that he would own 30% of the business, but William stated that the terms of their agreement "were that initially he would get thirty percent of the net profits of the business after all expenses." In addition, there is evidence that William considered plaintiff as "management" because he could not trust an employee. The evidence that plaintiff received a share of the profits of the business therefore is *prima facie* evidence that he is a partner because there is no other evidence that the share of the profits paid to plaintiff was considered employee's wages. *See* G.S. 59-37(4)(b).

Further, "[t]he filing of a partnership tax return is significant evidence of the existence of a partnership. [Citation omitted.] Under the State and Federal income tax laws, a business partnership return may only be filed on behalf of an enterprise entered to carry on a business. G.S. 105-154; 26 U.S.C. § 761." *Reddington v. Thomas, supra* at 240, 262 S.E. 2d at 843. There is evidence in the present case that William prepared the tax return for the business indicating himself and plaintiff as co-owners. This constitutes a significant admission by William against his interest in denying the existence of a partnership. *See Eggleston v. Eggleston, supra; Reddington v. Thomas, supra.*

Although William testified that he and plaintiff never agreed on the terms of a partnership, the evidence of the acts and declarations of the parties was sufficient for the jury to infer that a partnership existed in which William and plaintiff were the owners in 70% and 30% shares. Thus, the trial judge did not err in denying defendants' motions for directed verdict and for judgment notwithstanding the verdict.

[2] Defendants' second and third arguments assign as error the trial judge's formulation of the issues submitted to the jury and the instructions given thereon. The issues and answers were as follows:

1. Did the plaintiff, Alvin Lewis Davis, own a partnership interest of 30% in the business, Davis Duplicating Machine [sic] and Supplies, from August 1, 1977, through December 1979?

ANSWER: Yes.

---

Davis v. Davis

---

2. If so, were earnings from the business, Davis Duplicating Machine [sic] and Supplies, used during the period the partnership was in effect to purchase and make payments on the building and lot described in deed record book 1174, page 261, Catawba County Registry?

ANSWER: Yes.

3. If so, is the plaintiff, Alvin Lewis Davis, entitled to an accounting for 30% of the profits and assets of the business known as Davis Duplicating Machine [sic] and Supplies for the period the partnership was in effect?

ANSWER: Yes.

It is the duty of the trial judge to declare and explain the law arising on the evidence given in the case. G.S. § 1A-1, Rule 51(a); *N.C. Board of Transportation v. Rand*, 299 N.C. 476, 263 S.E. 2d 565 (1980); *Rector v. James*, 41 N.C. App. 267, 254 S.E. 2d 633 (1979). This means, among other things, that the judge must submit to the jury such issues as when answered by them will resolve all material controversies between the parties, as raised by the pleadings. *Link v. Link*, 278 N.C. 181, 179 S.E. 2d 697 (1971); *Wesley v. Lea*, 252 N.C. 540, 114 S.E. 2d 350 (1960); *Howell v. Howell*, 24 N.C. App. 127, 210 S.E. 2d 216 (1974). *See also* G.S. § 1A-1, Rule 49(b). Therefore, the trial judge must explain and apply the law to the specific facts pertinent to the issue involved. *Investment Properties of Asheville, Inc. v. Norburn*, 281 N.C. 191, 188 S.E. 2d 342 (1972).

*Harrison v. McLear*, 49 N.C. App. 121, 123-24, 270 S.E. 2d 577, 578 (1980). *See generally Johnson v. Lamb*, 273 N.C. 701, 161 S.E. 2d 131 (1968).

As to the first issue, defendants argue that "[i]t was prejudicial for the trial Court to submit to the jury an issue in such vague and ambiguous language as 'a partnership interest of 30% of the business,'" and that the judge failed to define "partnership interest" in his charge. It is clear that the first issue merely raised the question for the jury to determine whether or not a partnership existed in which plaintiff owned a 30% share. Our review of the judge's charge reveals that it adequately explained

Davis v. Davis

and applied the law as we have stated it above to the facts related to this issue.

As to the second issue, the evidence is uncontroverted that funds from Davis Duplicating Machines and Supplies were used to purchase the building acquired as the new location of the business. It is clear that this issue raised the question for the jury to determine whether or not William breached his duty to the partnership. Our review of the judge's charge on this issue also reveals that it adequately explained and applied the law to the facts. *See generally McGurk v. Moore,* 234 N.C. 248, 67 S.E. 2d 53 (1951).

The third issue relates to plaintiff's prayer for an accounting of partnership funds and property. G.S. 59-52 provides, in part, that "[a]ny partner shall have the right to a formal account as to partnership affairs: (1) If he is wrongfully excluded from the partnership business or possession of its property by his co-partners, . . . (4) Whenever other circumstances render it just and reasonable." Of course, by its terms, this issue would not be determined by the jury if it answered the first issue "no." Thus, the judge's statement that "when a partnership is terminated as this one was, that is terminated by one partner, the other partner would have certain rights with respect to an accounting of the profits and assets of the alleged partnership business" is an accurate statement of the law applied to the facts from which arose plaintiff's prayer for an accounting. *See generally Casey v. Grantham,* 239 N.C. 121, 79 S.E. 2d 735 (1954); *McGurk v. Moore, supra.*

For these reasons, we find no error in the trial judge's formulation of the issues submitted to the jury and the instructions given thereon. We have carefully examined defendants' other exceptions relating to the trial judge's charge to the jury and likewise find no error. These arguments are without merit.

In defendants' fifth, sixth, seventh, and eighth arguments, they contend that the trial judge made various errors in drawing the final judgment and order for accounting. The trial judge's order states, in part, as follows:

(a) [In lieu of a receiver, the defendant, William S. Davis, shall within ten (10) days, post a $10,000.00 secured bond securing payment to the plaintiff of any sums found to be due him.]

. . . .

(b) H. Dwight Bartlett is hereby appointed Referee with all the powers and authority contained in G.S. 1A-1, Rule 53, including but not limited to, the employment of a certified public accountant and property appraisers to assist the Referee.

(c) The Referee shall conduct an accounting of the profits and assets of the business known as Davis Duplicating Machines and Supplies. He shall take such evidence as deemed necessary, [determine the value, if any, of the 30% interest of the plaintiff, Alvin Lewis Davis, in said business,] and make his report to the Court within ninety (90) days.

. . . .

(d) The [defendants] are ordered and directed to turn over all records to the Referee upon request and to cooperate fully with the Referee in making the accounting.

. . . .

(e) [Defendants shall pay all costs of this action as taxed by the Clerk, including but not limited to, expert witness fees of $50.00 to William J. Lawing, and $50.00 to Alex Barringer.]

. . . .

(f) [Defendants shall pay all costs of the accounting,] including but not limited to, referee's compensation and expenses, fees of accountant, appraisers, and stenographer.

. . . .

(g) [The defendants shall deposit with the Clerk of Superior Court of Catawba County within five days from filing of this judgment the sum of ONE THOUSAND ($1,000.00) DOLLARS to defray the necessary expenses of the referee.]

[3] Defendants' fifth argument states that the trial judge erred in defining the scope of responsibilities and powers of the referee appointed to conduct the accounting. Generally, the powers of a referee are governed by the order of reference. "Subject to the specifications and limitations stated in the order, every referee has power to administer oaths in any proceeding before him, and

has generally the power vested in a referee by law." G.S. 1A-1, Rule 53(e). However, "[w]hen matters of accounting are in issue before the referee, he may prescribe the form in which the accounts shall be submitted and in any proper case may require or receive in evidence a statement by a certified public accountant or other qualified accountant who is called as a witness." G.S. 1A-1, Rule 53(f)(2).

Under these general rules, we find no error in the trial judge's statements in sections "(c)" and "(d)" of the order regarding the referee's responsibilities and authority to conduct an accounting in this case.

[4]  Defendants also argue that the judge erred in ordering that they must "pay all costs of the accounting, including but not limited to, referee's compensation and expenses, fees of accountant, appraisers, and stenographer." Nevertheless, G.S. 6-21(6) clearly states that the compensation of referees "shall be taxed against either party, or apportioned among the parties, in the discretion of the court . . .." Furthermore, it is well settled that "[i]f an action is equitable in nature the taxing of the costs is within the discretion of the court, and the court may allow costs in favor of one party or the other, or require the parties to share the costs." *Hoskins v. Hoskins*, 259 N.C. 704, 707, 131 S.E. 2d 326, 328 (1963).

In the present case, the compensation of the referee was taxed against defendants in the trial judge's discretion by virtue of G.S. 6-21(6). Since plaintiff's prayer for an accounting of partnership funds and property is equitable in nature, the remaining costs of the accounting also were taxed in the judge's discretion; the exercise of such discretion is not reviewable on appeal. *Hoskins v. Hoskins, supra.* These arguments are therefore without merit.

We have carefully examined defendants' remaining arguments relating to the judgment and find them to be frivolous and without merit, not warranting further discussion in this opinion. Likewise, we have reviewed defendants' numerous assignments of error based upon certain evidentiary rulings made by the trial judge and find that those rulings exhibit no error.

For all the reasons stated, in the trial of this case, we find

---

**In re Kasim**

---

No error.

Judges HEDRICK and BECTON concur.